Estate of Louis Diamond, Deceased, Guaranty Trust Company of New York, Executor v. Commissioner.
Estate of Louis Diamond v. Commissioner
Docket No. 7083.
United States Tax Court
1946 Tax Ct. Memo LEXIS 192; 5 T.C.M. (CCH) 372; T.C.M. (RIA) 46112; May 16, 1946
M. A. Willment, Esq., for the petitioner. Walt Nandry, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $7,075.33 in estate tax. The only issue presented for decision is whether he erred in including in the gross estate $40,136.51 as a transfer within the meaning of section 811(c) or (d). Findings of Fact The decedent died testate on July 8, 1942 while residing in Brooklyn, New York. He was 68 years of age at the date of his death. The cause of his death and the length of his last illness are not shown. The Guaranty Trust Company is his duly constituted executor. The estate tax return was filed with the collector of internal revenue for the first district of New *193 York. The decedent created a trust in 1928 for the benefit of his only child, a daughter. The Guaranty Trust Company was trustee. The only property in the trust was policies of insurance on the petitioner's life. The decedent retained many of the incidents of ownership in the policies and he reserved the right to revoke or modify the trust. The decedent's business was not in good financial shape in the spring of 1937. Some real estate which he owned was rather heavily mortgaged and he felt that should the mortgages be foreclosed and a deficiency judgment entered against him, he might be induced to pay such deficiency judgment out of the insurance trust for his daughter, since that was the only property over which he had control that could easily be reduced to cash. He asked his attorney how he could prevent himself from taking such action and was advised to relinquish his powers by amending the trust. A proposed amendment of the trust was prepared and was executed by the decedent on August 22, 1938, but the Guaranty Trust Company was dissatisfied with the provisions for its compensation and refused to become trustee. Another draft of the proposed amendment was prepared and *194 was executed by the decedent and the trustee on January 7, 1939. This deed recited that whereas the decedent had reserved the right to amend the deed of trust of June 4, 1928, he now, in pursuance of that power of amendment, amended "the same so that it shall read as follows". What followed was a complete deed of trust. The insurance policies upon his life set forth in Schedule A were transferred to the trustee. The trustee was to hold them until it could collect all the monies due thereunder after the decedent's death. The trustee was to invest those funds and to pay the income to or for the use of the decedent's daughter until she should become 30 years of age, at which time one-half of the principal was to be paid to her. The income from the remaining principal was to be paid to her or for her until she arrived at 35 years of age, at which time the balance of the principal was to be paid to her and the trust terminated. Her issue were to take in case she died before the time for taking any of the corpus, and if she had none, then the trust corpus was to be distributed among such Hebrew charitable institutions as the trustee should select. The decedent was to pay the premiums on *195 the policies and the trustee was under no obligation in respect to the premiums. The trustees were given broad powers over the securities which might form a part of the trust corpus. The decedent reserved the right to add additional insurance policies on his life to the trust. The decedent executed his last will and testament on January 7, 1939. In that will he left his property in trust for his daughter. The provisions of the will were in general similar to those of the trust instrument of the same date. The executors and trustees named in the will were the decedent's nephew and the Guaranty Trust Company. Schedule A attached to the trust instrument of January 7, 1939 was as follows: SCHEDULEA
Insurance Policies referred to in the
foregoing instrument.
Number
Company
Amount
2185337
Metropolitan Life Ins. Co.
$10.000
4237225
Metropolitan Life Ins. Co.
25,000
3262525
Equitable Life Ins. Co.
25,000
* 3262527
Equitable Life Ins. Co.
25,000
$85,000
The record does not contain any information as to Metropolitan Policy No. 2185337. A gift tax return *196 and an amended gift tax return for 1939 were filed by the petitioner. Those returns contain no reference whatsoever to this policy. The policy is not mentioned in the estate tax return and the Commissioner made no adjustment based upon it. Policy No. 4237225, of the Metropolitan Life Insurance Company for $25,000, was issued on April 27, 1925. It is described as a whole life policy. The annual premium thereon amounted to $940.25. The cash surrender value of that policy on January 7, 1939 was $9,511.80. There was no loan on the policy at that time. The proceeds of the policy paid to the Guaranty Trust Company at the death of the decedent amounted to $23,303.17. The policy had not been irrevocably assigned to the trustee but on the records of the insurance company up to March 1940. Policy No. 3262527, of the Equitable Life Assurance Society of the United States, was an ordinary life policy issued on October 4, 1923 on which the annual premium was $1,114.25. There was no loan on that policy on January 7, 1939. Its cash surrender value at that time was $14,323.69. The beneficiary named therein was Guaranty Trust Company of New York, Trustee, to which the policy was irrevocably assigned *197 on the records of the insurer. A copy of the trust instrument of January 7, 1939 was filed with the insurer. Policy No. 3262525, of the Equitable Life Assurance Society of the United States, was an ordinary life policy issued on November 20, 1923 on which the annual premium was $1,114.25. There was no loan on that policy on January 7, 1939. Its cash surrender value at that time was $14,291.09. The beneficiary named therein was Guaranty Trust Company of New York, Trustee, to which the policy was irrevocably assigned on the records of the insurer. A copy of the trust instrument of January 7, 1939 was filed with the insurer. The total amount paid on the two Equitable policies to Guaranty Trust Company at the death of the insured was $57,038.68. The record contains no explanation of the footnote on Exhibit A to the effect that Equitable Policy No. 3262527 was held by the insurer as collateral for a loan made to the insured. The record contains no information as to the amount of the loan or when, if ever, it was paid. The total amount received by the trustee on the three policies at the death of the decedent was $80,341.85. This amount was not reported as a part of the gross estate. *198 The Commissioner, in determining the deficiency, increased the gross estate by $40,136.51 described as transfers by way of trust instrument as amended January 7, 1939. He gave the following explanation: The proceeds of the insurance policies transferred in trust by the decedent by trust, as amended on January 7, 1939, are included in the gross estate under the provisions of Section 811(c) and/or (d) of the Internal Revenue Code as a transfer made in contemplation of or intended to take effect in possession or enjoyment at or after death, or a transfer, the enjoyment of which was subject at the date of the decedent's death to change through the exercise of a power by the decedent to alter, amend or revoke. The transfer of January 7, 1939 was made in contemplation of death. Opinion MURDOCK, Judge: The Commissioner has held, in determining the deficiency, that the transfer in trust made on January 7, 1939 was made in contemplation of death. The petitioner's evidence is meager on all points and is particularly so on this one. The lawyer who drew the trust instruments for the decedent was the only witness. He testified that the decedent appeared to be in good health in 1928 and *199 when he last saw him in 1938 prior to the time the decedent entered the hospital. There is also evidence that the decedent conducted his wholesale grocery business until a few months of his death. The testimony also indicates that the change which was finally made on January 7, 1939 grew out of a question which the petitioner asked his attorney in the spring of 1937. The question was how he could put the trust property beyond his reach in case he was tempted to use it for his business purposes. It does not appear that any of the decedent's creditors were pressing him at that time or that his properties were too heavily mortgaged. It does not appear what the situation was in January 1939. The decedent was in a hospital in November 1938 suffering from a heart attack and he was unable to execute the new draft of the proposed change in the trust at that time. The cause of his death and the length of his last illness are not shown. The transfer here in question was made after the decedent had been in the hospital as a result of a heart attack, his will was made on the same day, and in the will he disposed of the remainder of his property in much the same way as he had disposed of the proceeds *200 of the life insurance policies in the trust instrument. We are unable to say on this record that the transfer of January 7, 1939 was not made in contemplation of death. Cf. Vanderlip v. Commissioner, 155 Fed. (2d) 152, (Apr. 23, 1946). Decision will be entered for the respondent. Footnotes
*. Policy held by Insurance Company as collateral for loan made to the insured.↩